UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

YIWU LIZHISHA ACCESSORIES CO.,
LTD., and HONG KONG LIZHISHA
JEWELRY CO., LIMITED,
                      Plaintiffs,

-v-

JJAMZ, INC., and PUNCH FASHIONS,
LLC,
                      Defendants.

16-CV-6418 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiffs Yiwu Lizhisha Accessories Co., Ltd. (doing business as Lisa Accessories Factory) ("Lisa") and Hong Kong Lizhisha Jewelry Co., Limited (collectively, "Plaintiffs") sue Defendant Jjamz, Inc. and its successor company, Defendant Punch Fashions, LLC, to collect outstanding debts. Plaintiffs move for summary judgment. For the reasons that follow, the motion is granted.

**I.    Background**

    Plaintiff Yiwu Lizhisha Accessories Co., Ltd. is a corporation headquartered in Zhejiang, China that manufactures and exports jewelry. (Dkt. No. 9 ("AC") ¶ 2.) Plaintiff Hong Kong Lizhisha Jewelry Co., Limited acts as Yiwu Lizhisha's marketing and sales agent. (AC ¶ 3.)

    Defendant Jjamz is a jewelry wholesaler. (AC ¶ 12.) In 2015, Jjamz transferred substantially all of its assets, its ongoing business, and certain liabilities to Punch. (Dkt. No. 26-5.)

    Between 2012 and 2014, Jjamz made over 115 purchases of accessories from Lisa. (AC ¶ 1.) The invoices on sixty-five of those purchases remain unpaid (in part or whole), amounting to a total debt of $515,966.99. (*Id.*, Dkt. No. 9-1.) Jjamz repeatedly reassured Lisa that the

outstanding balance would be paid. (Dkt. Nos. 9-2, 9-3, 9-4, 9-5.) On several occasions, Jjamz paid off individual invoices in part or in full. (Dkt. No. 9-4 at 5.)

In January 2015, in response to an e-mail from Lisa, Jjamz explained that it had given up control of the company to investors who were in the process of devising a payment plan. (Dkt. No. 1-5 at 1.) In its contribution and assignment agreement with Jjamz, Punch agreed to "pay, perform, and discharge when due" Jjamz's liabilities to Lisa. (Dkt. No. 26-5 at 7; Dkt. No. 26-6 at 20.)

Representatives from Jjamz also twice informed Lisa that Punch had assumed all of Jjamz's liabilities. (Dkt. No. 9-6 at 1; Dkt. No. 9-7 at 1.)

In August 2016, Plaintiffs filed suit against Jjamz seeking to collect payment on its debts. (Dkt. No. 1.) Plaintiffs later amended their complaint to add Punch as a co-defendant. (Dkt. No. 9.) Plaintiffs now move for summary judgment against both Jjamz and Punch. (Dkt. No. 24.)

## II.     Legal Standard

Summary judgment must be awarded "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'" *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)). The moving party has the burden of proving the absence of a genuine dispute of material fact. *Miner v. Clinton Cty, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008). "In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact." *Camacho Mauro Mulholland LLP v. Ocean Rick Retention Grp., Inc.*, No. 09 Civ. 9114, 2010 WL 2159200, at *2 (S.D.N.Y. May 26, 2010). "'[A]ll that is required [from a non-moving party] is that sufficient evidence

supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Id.* (quoting *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006)). However, "[w]here the movant shows a prima facie entitlement to summary judgment, 'the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact.'" *Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*, 2016 U.S. Dist. LEXIS 107945, *32 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006)).

"The standard of review is the same when a motion for summary judgment is unopposed." *Adam Friedman Assocs. V. Media G3 Inc.*, No. 10 Civ. 5350, 2011 WL 6287981, at *1 (S.D.N.Y. Dec. 14, 2011). The district court is still obligated "to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004).

Local Civil Rule 56.1 also "requires a party moving for summary judgment to submit 'a separate, short and concise statement' setting forth material facts as to which there is no genuine issue to be tried.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 72 (2d Cir. 2001) (quoting Local Rule 56.1(a)). "The facts set forth in a moving party's statement 'will be deemed to be admitted unless controverted' by the opposing party's statement." *Id.* (quoting Local Rule 56.1(c)). "[A] court 'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements, but it may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement." *Sheet Metal Workers' Nat. Pension Fund v. Maximum Metal Manufacturers Inc.*, No. 13 Civ. 7741, 2015 WL 4935116, at *3 (S.D.N.Y. Aug. 18, 2015) (quoting *Holtz*, 258 F.3d at 72).

## III. Discussion

Plaintiffs move for summary judgment on (1) their claim against Jjamz for account stated, and (2) Punch's successor liability for Jjamz's debts. Defendant Jjamz failed to file an opposition to Plaintiff's motion. (*See* Dkt. No. 38.)

The Court addresses the claims against each Defendant in turn.

### A. Account Stated Claim against Jjamz

Plaintiffs are entitled to summary judgment against Jjamz under an account stated theory of liability. "An account stated is an agreement between parties to an account based on prior transactions between them with respect to the correctness of the account items and balance due." *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 216 (S.D.N.Y.2007) (quoting *Jim–Mar Corp. v. Aquatic Const., Ltd.*, 600 N.Y.S.2d 790, 790 (App. Div. 3d Dep't 1993)). The agreement may be express, *see id.*, or it may be implied. *See IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F.Supp.2d 395, 411 (S.D.N.Y. 2009); *see also Camacho Mauro Mulholland LLP v. Ocean Risk Retention Grp., Inc.*, No. 09 Civ. 9114, 2010 WL 2159200, at *3 (S.D.N.Y. May 26, 2010). Whether an account stated arises by implication will "var[y] with circumstances that surround the submission of the statements and those circumstances include, of course, the relation between the parties." *Manhattan Motorcars*, 244 F.R.D. at 216 (quoting *Newburger–Morris Co. v. Talcott,* 219 N.Y. 505, 512 (1916)).

To prevail on a claim for account stated, a plaintiff must establish the following elements: "'(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated.'" *Camacho Mauro Mulholland LLP v. Ocean Risk Retention Grp, Inc.*, No. 09 Civ. 9114, 2010 WL 2159200, at *2 (S.D.N.Y. May 26, 2010) (quoting *IMG Fragrance Brands*, 679 F.Supp.2d at 411). "The second and third requirements (acceptance of the account as correct and a promise to pay the amount stated) may be implied if 'a party receiving a

statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment.'" *IMG Fragrance Brands*, 679 F. Supp. 2d at 411 (quoting *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999)).

As to the first element of their claim, Plaintiffs have established that an account was presented to Jjamz. Lisa undisputedly sent Jjamz invoices, and Jjamz acknowledged receipt. (Dkt. No. 9-2 at 4.) Moreover, on more than one occasion, Lisa informed Jjamz of the outstanding amount owed. (Dkt. Nos. 9-2, 9-3, 9-4, 9-5.) In January 2014, Jjamz again acknowledged that it was "in receipt of [Lisa's] documents in the amount of $77,786.54, and promised to "review this week and send to our bank with approval for payment." (Dkt. No. 9-2 at 4.) In June, Lisa reminded Jjamz that "the outstanding amount has grown to over USD 500k," (Dkt. No. 9-4 at 2), and Jjamz responded, "I know and I am working on this w the Tanners[1] right now." (*Id.* at 1.) There is no genuine issue of material fact as to whether an account was presented to Jjamz.

As to the second element, Plaintiffs have established that Jjamz accepted the account presented as correct. Jjamz did not object in writing to any of the invoices Lisa sent it. To the contrary, Jjamz repeatedly made assurances that it would pay its balance. (Dkt. Nos. 9-2, 9-3, 9-4, 9-5.) The closest Jjamz came to objecting was in a January 17, 2014, email to Lisa explaining, "I cannot recall promising that we will pay $25,000 per month because I do not make promises I cannot keep!" (Dkt. No. 9-2 at 3.) However, in the same email, Jjamz's representative assured Lisa that Jjamz still intended to pay and would "try to send monthly payments from this year but I cannot guarantee the amount." (*Id.*) Jjamz's lack of objection amounts to acknowledgment

---

[1] Ken Tanner and his wife, Wendi, were the owners of Jjamz, Inc. (Dkt. 26-6 at ¶ 12.) The Tanners currently have a 10% interest in Punch. (*Id.*)

that the account presented was correct. *See Rand Rosenzweig Smith Radley Gordon & Burstem, LLP v. Berger*, 669 N.Y.S.2d 555 (1998) ("[R]eceipt and retention of [an obligee's] accounts, without objection within a reasonable time, and agreement to pay a portion of the indebtedness, [gives] rise to an actionable account stated.")

Finally, the last element of Plaintiffs' claim is a promise from Jjamz to pay. Plaintiffs have adduced sufficient evidence of Jjamz's promise to pay the account stated. A debtor's partial payment of a debt is evidence of its implied agreement to pay. *See Kramer v. Aronoff*, 638 F. Supp. 714, 720 (S.D.N.Y. 1986). On January 7, 2014 Jjamz paid Lisa $10,906.78. (Dkt. No. 9-2 at 4.) On May 16, 2014, another Jjamz representative sent confirmed payment on four of Lisa's invoices, totaling $5,090.59. (Dkt. No. 9-4 at 5.) On October 7, 2014, Jjamz paid another $3,616.77 on an invoice from Lisa. (Dkt. No. 9-1 at 2.) By paying Lisa some of the debt (and by failing to raise a timely objection), Jjamz implicitly promised to pay the account stated. *See, e.g.*, *IMG Fragrance Brands*, 679 F. Supp. 2d at 411 (explaining that the second and third elements of account stated claim can be established by either debtor's failure to object within a reasonable time or partial payment).

Plaintiffs have adduced sufficient evidence to establish Jjamz's liability for account stated as a matter of law.

### B. Defendant Punch's Successor Liability

The Court next addresses whether Punch assumed liability for Jjamz's debts after the former purchased the assets of the latter.[2] (Dkt. No. 26-5.) "Under both New York law and

---

[2] Punch also argues that Plaintiffs are not entitled to summary judgment because Plaintiffs have "not established the essential elements of an account stated against Punch." (Dkt. No. 29-6.)

This argument is a non-starter: since *Jjamz*'s liability for account stated is already established as a matter of law, Punch is also liable for this debt if it assumed Jjamz's debts.

traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006). Therefore, to prevail on their claim for successor liability, Plaintiffs must rely on "one of the exceptions to 'the general rule finding that a business entity acquiring the assets from another business generally results in no successor liability.'" *Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 456 (S.D.N.Y. 2015) (quoting *New York v. Town of Clarkstown*, 95 F.Supp.3d 660, 682 (S.D.N.Y. 2015)). Successor liability applies where: "(1) the successor corporation either expressly or impliedly agrees to assume the predecessor's liabilities; (2) the transaction is a de facto merger; (3) the successor may be considered a mere continuation of the predecessor; or (4) the transaction is fraudulent." *Chao*, 97 F. Supp. 3d at 274 (quoting *Kessenich*, 120 F. Supp. 2d at 255); *see also Xue Ming Wang*, 262 F. Supp. 3d 83, 87 (2017).

Plaintiffs rely on the first exception, arguing that Punch "expressly assumed liability by contract." (Dkt. No. 36 at 2; *see also* AC ¶ 1.) The Court agrees that, when Jjamz transferred its assets and liabilities to Punch, Punch assumed its predecessor's liabilities as a matter of law.

Section 3(i) of the assignment agreement states: "[Punch] hereby assumes on the date hereof and agrees to pay, perform, and discharge when due the following obligations of [Jjamz]. . . .[t]he trade accounts payable set forth on Schedule 3(i)." (Dkt. No. 26-5 at 7.) Schedule 3(i) includes a $494,832 liability owed to Plaintiffs. (Dkt. No. 26-6 at 20.) By its clear text, this provision amounts to express contractual assumption of successor liability.

---

There is no need for Plaintiffs to prove each of the elements of account stated against Punch as well in order to establish Punch's successor liability.

Punch does not meaningfully respond to Plaintiffs' express assumption argument. Instead, Punch points out that the validity of its contract with Jjamz is currently being litigated in state court. (Dkt. No. 29 at 7.)³ Punch argues that it is not liable for Jjamz's debt to Lisa because "'[i]t is well established that fraud, misrepresentation or other equitable considerations' can 'prevent recovery under a theory of account stated.'" (Dkt. No. 29 at 7 (quoting *LLT Intern., Inc. v. MCI Telecommunications Corp.*, 69 F. Supp. 2d 510, 516–17 (S.D.N.Y. 1999)). It is true, as Punch points out, that "fraud, misrepresentation or other equitable considerations can overcome the [doctrine of account stated]." *Kuczynski v. Miller*, No. 91 Civ. 6680, 1992 WL 309602 at *4 (S.D.N.Y. Oct. 15, 1992); *see LLT Intern*, 69 F. Supp. 2d 510, 516–17 (holding that a consultant concealing improper billing practices prevented said consultant from recovering for unpaid invoices on account stated theory) (as cited by Dkt. No. 29 at 7 n.20); *see also Lewis & Merritt, L.L.P. v. Smith*, 650 N.Y.S.2d 921, 922 (Sup. 1996) ("Mere silence and failure to object to an account cannot be construed as an assent to the correctness of the account without

---

³ At the outset, the Court notes that Punch questions the enforceability of its contract with Jjamz. (Dkt. No. 29 at 7.) Its legal reasoning as to why the contract is unenforceable is opaque, but some of its factual allegations (*see* Dkt. No. 29 at 2–3), if true, could conceivably support a claim against Jjamz for fraudulent inducement. *See Robinson v. Deutsche Bank Tr. Co. Americas*, 572 F. Supp. 2d 319, 322 (S.D.N.Y. 2008) ("Under New York law, to sustain a claim for fraudulent inducement a plaintiff must successfully allege '(1) a knowingly false representation of a material fact and (2) detrimental reliance thereon.'" (quoting *Junk v. Aon Corp.*, No. 07 Civ. 4640, 2007 WL 4292034, at *6 (S.D.N.Y. Dec. 3, 2007)).

But while Punch's allegations of fraudulent inducement could render the contract *voidable*, *see, e.g.*, *McCaddin v. Se. Marine Inc.*, 567 F. Supp. 2d 373, 378 (E.D.N.Y. 2008), they would not be *void*, *i.e.*, categorically unenforceable. *See, e.g.*, *Adams v. Suozzi*, 433 F.3d 220, 227 (2d Cir. 2005) (citations omitted) ("Void" contracts "produce[] no legal obligation.' . . . 'Voidable' contracts are subject to rescission, but otherwise create legal obligations.") (quoting *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31 (2d Cir.2001)).

Punch therefore cannot avoid successor liability here by arguing that the contract is unenforceable based on fraudulent inducement.

considering the factual circumstances attending the particular transactions to determine if an account stated may properly be implied.") (as cited by Dkt. No. 29 at 7 n.20).

These cases establish that fraudulent billing practices can stand as a defense to a claim for account stated. None of these cases, however, addresses the question whether a successor company that is fraudulently induced to assume the *legitimate* debts of its predecessor can escape liability to the predecessor's creditors.

Furthermore, though fraud is one exception to successor liability, the exception is designed to protect only creditors and not successors. "[T]ransactions undertaken to defraud creditors" are an exception to "the rule that an asset purchaser is not liable for the seller's debts." *Cargo Partner v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003); *see also* 15 Fletcher Cyc. Corp. § 7125 (September 2017 update) ("[I]f the transfer constitutes, either in fact or as a matter of law, a fraud upon the creditors of the other corporation, the creditors defrauded by the transfer may, in equity, follow the property into the hands of the new corporation and subject it to the satisfaction of their claims, or hold the new corporation liable to the extent of its value."). Punch points to no cases, nor does independent research reveal any cases, standing for the proposition that fraud by a predecessor negates a creditor's ability to recover from a successor that has expressly assumed the predecessor's debts.

In short, Punch offers no persuasive reason why its separate litigation against Jjamz is relevant to the issue of successor liability. Punch's contentions are wholly unresponsive to Plaintiffs' argument that Punch expressly agreed to assume Jjamz's liabilities. *See Xue Ming Wang*, 262 F. Supp. 3d at 87 (A successor is liable when it "either expressly or impliedly agrees to assume the predecessor's liabilities. . . ."). Based on Punch's contract with Jjamz, Plaintiffs have established "prima facie entitlement to summary judgment," and Punch has failed to meet

its burden "to point to record evidence creating a genuine issue of material fact." *Landtek Grp., Inc.*, 2016 U.S. Dist. LEXIS 107945, *32 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006)).  Plaintiffs have therefore established Punch's successor liability for Jjamz's debts to Lisa as a matter of law.[4]

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 24.  The matter will be referred to Magistrate Judge Sarah Netburn for an inquest on damages.

SO ORDERED.

Dated: August 20, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[4] Finally, the Court rejects Punch's argument that summary judgment is premature under Rule 56(d). (Dkt. No. 29 at 8–9.)  The deadline to complete all discovery in this case was November 17, 2017, and the Court advised the parties that no further extensions would be granted. (Dkt. No. 19.)  Plaintiffs filed their summary judgment motion on December 1, 2017, after discovered had closed. (Dkt. No. 24.)  As Punch points out, the Federal Rules of Civil Procedure require that parties be "afforded the *opportunity* to conduct discovery." (Dkt. No. 29 at 8 (emphasis added).)  Punch was given that opportunity, and provides no justification for its failure to obtain any necessary discovery within the allotted time period.